IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| LITTLE OUCHIES COMPANY, *et al.* | ) | CASE NO. 1:25-cv-02488 |
| | ) | |
| Plaintiffs, | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| v. | ) | |
| | ) | PLAINTIFFS' EMERGENCY *EX PARTE* |
| KATHERINE JOY FREDERICK, *et al.* | ) | MOTION FOR TEMPORARY |
| | ) | RESTRAINING ORDER, |
| Defendants. | ) | MEMORANDUM IN SUPPORT AND |
| | ) | REQUEST FOR PRELIMINARY |
| | ) | INJUNCTION BRIEFING SCHEDULE |
| | ) | AND EVIDENTIARY HEARING DATE |

INTRODUCTION[1]

Emergency injunctive relief in this case is urgently needed and wholly warranted to stop the irreparable harm to Plaintiffs being caused by Defendants' unlawful and criminal acts.

Defendants (two former Company employees and its IT-savvy marketing consultant) have stolen Plaintiffs' entire e-commerce business. Their computer crimes, embezzlement of Company funds and wholesale theft of everything in the Company's office suites left Plaintiffs without the means, tools, funds and online account access needed to manufacture and sell their products and operate their online business.

In short, Defendants unlawfully used Company computers to get ahold of the President's login credentials and passwords to Company accounts and then used those stolen credentials to steal the President's administrator rights, change his passwords, take over his email account, steal his emails, change his email domain name to "spam" and lock him out of the business. Defendants' actions violate federal and state anti-hacking, computer fraud and identity theft laws.

---

[1] Capitalized terms in the Introduction are defined below.

As a result of Defendants' wrongdoing, Plaintiffs cannot access the Company accounts or online platforms used to run the business, including (for instance) the Google cloud storage account where all business records and documents are maintained, the Gmail accounts and emails and the TikTok account (used for marketing purposes) and associated TikTok Shop account which, before Defendants hijacked it, was by far the Company's greatest source of revenue. Defendants used their stolen access to redirect TikTok Shop sales proceeds away from the Company bank account to an unknown bank account that one or more Defendants owns and controls. And, while Defendants were raiding the Company, they secretly formed two new companies as owners and went into business together.

Despite multiple written demands, Defendants refuse to return and restore what they stole. Their criminal and unlawful acts caused a complete halt in manufacturing, production and product deliveries. Absent return of possession and control over Company property, cash and online accounts, manufacturing capacity cannot be restored, the Company's TikTok Shop inventory (which Defendants emptied) cannot be replenished, new purchase orders cannot be accepted, open purchase orders cannot be filled and stolen revenue streams cannot be redirected back to the Company.

Positive online customer reviews are the lifeblood of the Company, but negative customers reviews already have been posted because deliveries are late and orders cannot be filled due to Defendants' crimes and other wrongdoing. Plaintiffs have suffered reputational harm, downgraded online ratings, lost sales, lost new customers, lost return customers, lost market share and other irreparable harms that warrant the immediate, emergency injunctive relief for which they pray.

On top of all that, Plaintiffs already have suffered thousands of dollars in lost sales – revenue they can never recapture but instead is gone forever – and the busiest shopping-season of

the year, with holiday sales accounting for 30%-40% percent of the Company's annual revenue, falls within the several weeks before and after "Black Friday." In other words, *now*.

Holiday shoppers will not wait. They will make their gift purchases elsewhere.

Defendants had no right to steal Plaintiffs' property, and they should not be permitted to continue to unlawfully withhold it. Money damages awarded in the future will not save Plaintiffs' business now. It will not preserve or restore the goodwill and positive ratings it took Plaintiffs more than a year to build. It will not preserve or restore the momentum, growth trajectory and market share that Plaintiffs achieved before interference and derailment by Defendants' lawlessness. An emergency injunction is the only effective way to stop the harm (and attempt to reverse it) before it is too late.

For these reasons, and as shown below and in the incorporated evidentiary materials submitted in support of their motion, the undeniable irreparable harm to Plaintiffs caused by Defendants' cybercrimes and other unlawful acts strongly warrants the emergency injunctive relief Plaintiffs seek. Plaintiffs therefore respectfully ask the Court to grant this motion in its entirety and enter the proposed Temporary Restraining Order attached hereto as <u>Exhibit A</u>.

<u>REQUESTED EMERGENCY INJUNCTION ORDER</u>

To preserve the viability of Plaintiffs' business and their property, account access and business to them before it is too late, Plaintiffs ask the Court to grant them an emergency injunction that enjoins, restrains and orders Defendants and their respective agents, servants, officers, employees and attorneys and all others in active concert or participation with any of them (the "Enjoined Parties"), as follows:

1. Ordering the Enjoined Parties to immediately deliver to Plaintiffs all login credentials, access codes and passwords to all Company accounts and emails, including without limitation the Company's Google, Gmail, TikTok, TikTok Shop and Instagram accounts and all other e-commerce and social media platforms.

3

2.      Ordering the Enjoined Parties to immediately restore the President's unrestricted access and exclusive administrator rights to all Company accounts and emails and enjoining and restraining them from using and/or accessing them (except for the limited purpose of restoring the President's rights and access).

3.      Ordering the Enjoined Parties to immediately return all Plaintiffs' tangible and intangible property to Plaintiffs, including 3D printers, computers, manufacturing equipment, machines, electronic devices, telecommunications equipment, laptops, cellphones, financial records, personnel records, digital data, hardcopy documents and other property Defendants stole from the Company's offices and computers, and enjoining and restraining them from further using and/or accessing them.

4.      Ordering the Enjoined Parties to immediately return all Plaintiffs' confidential information to Plaintiffs, including (in addition to account access codes, passwords and login credentials) product specifications, manufacturing specifications and techniques, customer and supplier lists, employee and contractor lists, personnel files, financial and accounting documents, contracts and agreements, pricing sheets, raw material data and digital information, and immediately retrieve all such information from third parties to whom they have disclosed such material and enjoining and restraining them from further disclosures of such material to anyone and further use of such material for any purpose, whatsoever.

5.      Enjoining and restraining the Enjoined Parties from soliciting and/or employing current or former Company employees, consultants and contractors, making disparaging and/or defamatory statements about Plaintiffs and their business and engaging in any and such other acts or communications that in any way violate their Non-Disclosure Agreements with the Company or interfere with Plaintiffs' business and their contractual and business relationships.

6.      Ordering the Enjoined Parties to immediately wire to the Company's bank account (upon email receipt of wire instructions from Plaintiffs) readily available funds in the amount of Defendant Frederick's transfers of funds from Company bank accounts to bank accounts in her name (or owned or controlled by her) for the period from May 1, 2025, to the date the Court enters its Order – and in no event in an amount less than $100,000.00.

7.      Ordering the Enjoined Parties to immediately provide Plaintiffs with complete copies of Defendant Frederick's unredacted bank account statements (for all accounts in her name, solely or jointly) for the period from August 1, 2025, to the date the Court enters its Order.

8.      Ordering the Enjoined Parties to preserve all files, notes, memoranda, financial information, records, emails, text messages, digital data and all other documents, information and communications pertaining in any way to Plaintiffs and enjoining

and restraining them from modifying, destroying, spoliating, deleting and/or altering those materials in any way.

9.    Ordering the Enjoined Parties to preserve all files, notes, memoranda, financial information, records, emails, text messages, digital data and all other documents, information and communications pertaining in any way to the Havna Companies, and enjoining and restraining them from modifying, destroying, spoliating, deleting and/or altering those materials in any way.

10.   Enjoining and restraining the Enjoined Parties from transferring, distributing, assigning, tampering with, altering, using or in any way liquidating or disposing of any of Plaintiffs' money, receipts, revenues, bank account holdings, investment account holdings and other assets, and ordering them to preserve all such assets and hold them in constructive trust for Plaintiffs.

11.   Ordering each Defendant to file an affidavit within five (5) days that he/she is served with a copy of the Court's Order attesting that he/she has fully complied with the Court's emergency injunction order.

Plaintiffs also ask the Court to set a briefing schedule and hearing date for Plaintiffs' Motion for Preliminary Injunction.

<u>STATEMENT OF FACTS</u>

To avoid unnecessary repetition and maximize efficiency, Plaintiffs incorporate into this motion by reference their Verified Complaint (ECF #1), the Declaration of Craig Butrick and all exhibits thereto (attached hereto as <u>Exhibit B</u>) and the supporting Declaration of Counsel and all exhibits thereto (attached hereto as <u>Exhibit C</u>).[2] Those evidentiary materials detail the facts and evidence meriting the emergency injunctive relief. In summary:

Plaintiff Craig Butrick ("Mr. Butrick") is the founder, President, sole Director and 80% shareholder of LittleOuchies, an online business he started in 2024 to market and sell the quiet, portable, affordable "stim" devices he created and designed to help people with neurodivergent

---

[2] For clarity and to facilitate access, exhibits to the Butrick Declaration are designated as Exhibit B1, B2, *etc.* and exhibits attached to Counsel's Declaration are designated as Exhibits C1, C2, *etc.*

conditions self-regulate without distracting others or causing self-harm. *See* Butrick Decl. ¶ 6 and Exhibit B1 (LittleOuchies website).[3]

Defendant Logan Robinson ("Defendant Robinson") was an employee of the Company; and Defendant Lewis Smith ("Defendant Smith") was the Company's marketing consultant and assisted the Company with its computer/IT needs. *See* Verified Complaint ¶ 13(iv). In April 2025, Mr. Butrick hired Defendant Katherine Joy Frederick ("Defendant Frederick") to manage operational and financial matters. He appointed her Vice President, and she was granted a 20% ownership interest in the Company. *See* Butrick Decl. ¶ 10.

In September 2025, Mr. Butrick learned that Defendant Frederick had engaged in a number of improprieties, including unauthorized payments and transfers of Company cash to herself and to her personal bank account. *See* Butrick Decl. ¶ 15 and Exhibit B2 (bank statements and financial records). As a result, on September 14, 2025, he terminated her employment and revoked her Vice Presidency and all authority that she previously had to act for or on behalf of the Company. *See* Butrick Decl. ¶ 16 and Exhibit B3 (termination notice).

A couple of weeks later (on September 29, 2025), Defendant Frederick was allowed to return to work and resume her role, based on assurances that she had not intended to steal Company money and would do her job as assigned and not engage in any more unauthorized actions. *See* Butrick Decl. ¶ 17.

---

[3] As used throughout, "LittleOuchies" or the "Company" refers collectively to the entities which Mr. Butrick used for LittleOuchies business, including LittleOuchies' predecessor, Orion Technical Solutions LLC ("Orion LLC"), a company whose sole owner and manager is Mr. Butrick, and three other companies recently merged into LittleOuchies: Radiant Mind Company ("Radiant Mind"), Tactical Mind and Body Inc. ("Tactical Mind") and Orion Studios LLC ("Orion LLC"). LittleOuchies is the surviving entity, and the LittleOuchies business is now run through that single entity. *See* Butrick Decl. ¶ 14; Counsel Decl. ¶ 21 and Exhibit C19 (merger certificates).

However, a mere four days later (on October 3, 2025), Defendant Frederick used a Company computer to get ahold of Mr. Butrick's personal login credentials and passwords to online business accounts, and she then used those stolen credentials to steal Mr. Butrick's primary administrator rights to the Google account by transferring those rights from Mr. Butrick's account (craig@littlelouchies.com) to hers (kat@littlelouchies.com). *See* Butrick Decl. ¶ 18 and <u>Exhibit B4</u> (Google account intrusion evidence).

With Defendant Smith's assistance, Defendant Frederick subsequently used the stolen administrator rights to change Mr. Butrick's login credentials and passwords (without authority) so that Mr. Butrick could no longer access the account or any of the Company documents and records maintained there. *See* Butrick Decl. ¶ 19. In similar fashion, Defendant Frederick and her helpers took control of the Company's other online accounts (also without authority), including the TikTok Shop account that was the Company's greatest source of revenue; and they locked Mr. Butrick out of those accounts, too. *See* Butrick Decl. ¶¶ 20-24 and Exhibits referenced therein.

Defendant Frederick also used her stolen administrator control to change the domain name of Mr. Butrick's email account to "spam" – thus ensuring that he would not receive emails sent to him and creating the false impression that Mr. Butrick was no longer part of the business. *See* Butrick Decl. ¶ 28 and <u>Exhibit B11</u> (screenshot re: administrator change of email domain name).

Over the next few weeks, Defendant Frederick feigned innocence and promised to restore Mr. Butrick's full administrator rights; and a few times she used her stolen administrator control to allow him limited access to an account and, a short time later, would revoke his access again. *See* Butrick Decl. ¶ 25. Then, on October 16, 2025 (while Mr. Butrick was on leave), Defendant Frederick emptied out the Company's bank accounts. She transferred almost all the Company cash in those accounts to her own bank account, thus leaving the Company without money it needed to

cover expenses and obligations. *See* Butrick Decl. ¶ 27 and <u>Exhibit B10</u>. Demands for return of the stolen money and accounts were ignored.

On October 28, 2025, Mr. Butrick was shocked by a call from the Company's landlord demanding to know why the business was moving and breaking its lease. *See* Butrick Decl. ¶ 30. When Mr. Butrick arrived at the Company's offices, he discovered that everything in them that was used to manufacture the Company's products and operate the business, including items owned personally by him, was gone. *See* Butrick Decl. ¶ 30; *see also* <u>Exhibit C6</u> (photos of emptied office suites). There were no signs of forced entry. None of the Company's workers (including Defendants) were anywhere to be seen. Building management, maintenance and security personnel reported that Defendant Frederick had changed the locks to the LittleOuchies offices the preceding week (when Mr. Butrick was on leave) and orchestrated what they thought at the time was a "move out." *See* Butrick Decl. ¶ 30; *see also* <u>Exhibit C22(a)</u> and <u>Exhibit C22(b)</u> (police reports).

Less than twenty-four hours later, Defendant Frederick's lawyers terminated their attorney-client relationship with her (on October 29, 2025) when they were told what had happened. *See* Butrick Decl. ¶ 33; Counsel Decl. ¶¶ 9-11 and <u>Exhibit C8</u> and <u>Exhibit C9</u> (counsel communications, including termination-of-representation notice).

On October 28 and 29, 2025, Defendants together formed as owners two new companies – Havna Group, LLC and Havna Brands LLC (together, the "Havna Companies") – whose principal place of business is Defendant Frederick's home address. *See* Butrick Decl. ¶ 34; *see also* <u>Exhibit C20</u> (Havna Group Articles of Organization) and <u>Exhibit C21</u> (Havna Brands Articles of Organization).

On November 3, 2025, Defendant Frederick admitted that she knows the whereabouts of the stolen property, but she refused to return it or disclose the location unless she receives a payoff (*i.e.*, a "buyout" of her 20% ownership interest). *See* Counsel Decl. ¶ 13 and Exhibit C11.

Written demands sent to each Defendant for return of the stolen property, the stolen accounts and the stolen login credentials have been consistently refused and ignored. *See* Butrick Decl. ¶¶ 25, 29, 32-33, 35 and Exhibit B14; Counsel Decl. ¶¶ 4-7, 9-12, 15 and Exhibits referenced therein.

Defendants stole essentially everything the Company needs (and owns) to sustain and operate the business. Plaintiffs have tried to reason with Defendants and convince them to voluntarily give Plaintiffs their business back. Defendants will not be persuaded. And Defendant Frederick, rather than showing any remorse whatsoever for her cyber-crimes, grand larceny and embezzlement activities, is instead "doubling down" and trying to extort money from Plaintiffs by holding their property, their business and their livelihood hostage.

## LAW AND ARGUMENT

The following factors are relevant when evaluating a motion for emergency injunctive relief:

(1)     Whether there is a strong likelihood plaintiffs will succeed on the merits;

(2)     Whether plaintiffs are substantially likely to suffer irreparable injury absent emergency injunctive relief;

(3)     Whether issuing the requested injunction will cause substantial harm to others; and

(4)     Whether the public interest will be served by the requested injunction.

*See* Taylor v. Iadicicco, 2024 U.S. App. LEXIS 26697, *3 (6th Cir, Oct. 22, 2024). No single factor is dispositive; instead, they are balanced "with the flexibility that traditionally has characterized the law of equity." Jones v. Caruso, 569 F.3d 258, 277 (6th Cir. 2009)

I.      PLAINTIFFS ARE LIKELY TO PREVAIL ON THE MERITS OF THEIR CLAIMS.

It is a crime under the Computer Fraud and Abuse Act ("CFAA") to intentionally access a computer without authorization (or to exceed authorized access) and thereby obtain information from a protected computer. *See* 18 U.S.C. § 1030(a)(2)(C). It is also a crime to conspire to commit or attempt to commit a violation of subsection (a). *See* 18 U.S.C. § 1030(b). The Act expressly provides a private right of action to persons aggrieved by a violation, and it expressly authorizes injunctive relief against the violators. *See* 28 U.S.C. § 1030(g).

Here, the Company computers that Defendants unlawfully accessed are "protected computers" because they are used in or affect interstate commerce (*see* 18 U.S.C. § 1030(e)(2)); and Defendants were not authorized to use Company computers to get ahold of the President's login credentials and passwords, use them to hijack the Company's online accounts or engage in any of the other unauthorized cyber acts they committed. *See* United States v. Soybel, 13 F.4th 584 (7th Cir. 2021) (changing victim's password without his permission violates the CFAA).

It is a crime under the Unlawful Access to Stored Communications Act (the "SCA") to intentionally access a "facility" through which an electronic communications service is provided (which includes a computer), without authorization or exceeding authorization, and thereby obtain, alter or prevent unauthorized access to a wire or electronic communication in an electronic storage system. *See* 18 U.S.C. § 2701(a). That Act also provides a private right of action and injunctive relief against those who violate it. *See* 18 U.S.C. § 2707(a), (b). Here, Defendants' conduct – as

10

described above and documented in the supporting Declarations, Exhibits and Verified Complaint – clearly falls within the proscriptions of the SCA.

Defendants also committed criminal acts prohibited by Ohio computer fraud, anti-hacking and identity theft statutes. R.C. § 2913.04(A) makes it a criminal offense to knowingly use or operate another's computer or telecommunications property without authorization. R.C. § 2913.04(B) makes it a criminal offense to hack, knowingly gain access to or attempt to gain access to or to "cause access to be gained to any computer, computer system, computer network ... without the consent of, or beyond the scope of the ... consent of, the owner." And, R.C. § 2913.49 makes it a criminal offense to use someone's login credentials and passcodes without his consent and hold oneself out as the other person or in a manner that misrepresents that the hijacked credentials and passcodes belong to the hijacker. Private rights of action and injunctive relief are available for violations of the Ohio statutory provisions. *See* Verified Complaint ¶¶ 70, 74. Here, the sworn statements and corroborating documentary evidence demonstrate that Defendants engaged in conduct proscribed by Ohio law and properly subject to injunctive relief.

Ample authority supports emergency injunctive relief against offenders who engage in the kind of conduct that Defendants committed here:

- <u>Tullia Heissenberg v. Doe</u>, 2021 U.S. Dist. LEXIS 257218 (D.C. Fla. Apr. 22, 2021) (granting *ex parte* emergency motion for TRO, as defendants did not own and had no right to possess the cyber-stolen assets, and plaintiff was likely to suffer irreparable harm absent immediate injunctive relief).

- <u>Prosperity Tax Adv, LLC v. Vorwig</u>, 2025 U.S. Dist. LEXIS 224022 (D.C. Fla. Nov. 14, 2025) (granting TRO in action alleging CFAA violations, breach of non-disclosure agreement and related claims against former consultant who possessed, misappropriated and misused plaintiff's digital data and whose offending conduct caused service disruptions and interfered with plaintiff's customer relationships).

- <u>Universal Engraving, Inc. v. Duarte</u>, 519 F. Supp. 2d 1140 (D. Kan. 2007) (preliminary injunction granted against former employee who surreptitiously

11

downloaded plaintiff's password-protected digital data to a personal storage device and installed software allowing him to remotely access company computer).

- Taxsalelists.com, LLC v. Rainer, 2009 U.S. Dist. LEXIS 122274 (D. Col. Dec. 11, 2009) (*ex parte* TRO granted against former employees who reset passwords and unlawfully obtained digital data from plaintiff's computer system and used it to conduct a competing enterprise and thereby caused imminent and ongoing injury).

- Paparazzi, LLC v. Sorenson, 2022 U.S. Dist. LEXIS 91431 (D. Utah May 20, 2022) (granting preliminary injunction that extended temporary restraining order against former employee and company consultants who had confidential information and digitally stored data obtained, without authority, via former employee's admin account to plaintiff's computer systems and networks).

-  Statera, Inc. v. Henrickson, 2009 U.S. Dist. LEXIS 68891 (D. Col. July 17, 2009) (granting *ex parte* TRO against former vice presidents who downloaded confidential files on plaintiff's computers to organize a competing enterprise).

- Bailey v. Nurmi, 2019 U.S. Dist. LEXIS 210931 (N.D. Cal. Dec. 6, 2019) (granting TRO against shareholder and former officer who, without authority, gained entry to the company's computer systems, took control of the company's online accounts – including Google Apps, GitHub and Amazon Web Services – and locked founder out of them and the company's digital data stored on them); *id.* at *6 (emergency injunctive relief warranted, as "the threat of being driven out of business is sufficient to establish irreparable harm") *quoting* Am. Passage Media Corp. v. Cass Commc'ns, Inc., 750 F.2d 1470, 1474 (9th Cir. 1985).

- SuccessFactors, Inc. v. Softscape, Inc., 544 F. Supp. 2d 975 (N.D. Cal. 2008) (preliminary injunction granted, as plaintiff was likely to prevail on claim that defendant's unauthorized access and use of password-protected information was a violation of the CFAA).

- YourNetDating, LLC v. Mitchell, 88 F. Supp. 2d 870 (N.D. Ill. Mar. 1, 2000) (granting TRO against former employee-programmer without bond because allegations that he used company codes to hack plaintiff's online dating site and divert customers to a site he controlled, if true, violate the CFAA).

Here, the Verified Complaint and evidentiary material submitted in support hereof demonstrate that there is a strong likelihood that Plaintiffs will prevail on one or more of their federal and state computer-related claims, as well as on their Ohio common law claims for conversion (Count Six), breach of fiduciary duty (Count Seven), breach of contract (Count Five)

and tortious interference (Count Eight). And, under these circumstances, no bond is needed and none should be required for the TRO to be given effect.

## II. PLAINTIFFS HAVE SUFFERED AND WILL CONTINUE TO SUFFER IRREPARABLE HARM ABSENT EMERGENCY INJUNCTIVE RELIEF.

Defendants already have caused reputational damage to Plaintiffs. Sales and customers already have been lost. Market share already has been diminished. And, Plaintiffs lack control over their business and over Mr. Butrick's personal computer passwords and passcodes. Those harms are irreparable and will worsen absent the emergency injunctive relief Plaintiffs justifiably ask the Court to grant.

## III. THE REQUESTED TRO WILL NOT SUBSTANTIALLY HARM THIRD PARTIES.

There is no evidence or concern that the requested TRO would harm third parties or interfere with their business. Indeed, curtailing Defendants' criminal and unlawful conduct will only affect the wrongdoers – as it rightly should.

## IV. GRANTING THE REQUESTED TRO IS IN THE PUBLIC'S INTEREST.

The public interest is served by encouraging entrepreneurs (like Mr. Butrick) to innovate and develop new products that fill consumer needs – not when his business is hacked, disrupted and stolen by disloyal employees and fiduciary breaches. Furthermore, Plaintiffs manufacture and sell products that help people with neurodivergent conditions; and Defendants' criminal and unlawful acts ground Plaintiffs' business to a halt. Customers who placed online orders for Plaintiffs' products – and who already paid for those purchases (funds with which Defendants absconded) – are not getting their orders and cannot get them until (at a minimum) Plaintiffs' manufacturing capacity and access to their online accounts are restored because, without those things, Plaintiffs cannot manufacture the products people bought and cannot even identify who ordered product, what they ordered or where to ship it.

Clearly, the public interest will be served by an injunction that gets customers what they bought and paid for – and when e-commerce runs smoothly and is not interrupted, disrupted or derailed by cyber-wrongdoing, hacking and computer hijinks like those that Defendants unlawfully committed.

CONCLUSION

The emergency injunction that Plaintiffs respectfully ask the Court to enter is warranted under the facts and circumstances present here – to protect Plaintiffs' business, to return Plaintiffs' property to them and restore online accounts to their rightful owners and to avert further irreparable harm to Plaintiffs, including more lost sales, market share and goodwill, rating downgrades and reputational harm and interference with customer and business relationships.

There is no lawful or legitimate excuse for Defendants' wholesale theft of Plaintiffs' entire business. An e-commerce business cannot function without access to and control over its online accounts, and a company that sells products it manufactures cannot survive without its manufacturing equipment and raw materials. The visceral images of LittleOuchies' emptied offices reflect the physical and digital devastation of Plaintiffs' business wreaked by Defendants' unlawful, criminal acts; and Defendants' insistent refusal to return and restore those items to their rightful owners warrants immediate judicial intervention and emergency injunctive relief.

Given that the holiday-shopping season is upon us, Plaintiffs and their customers cannot wait, and the requested TRO is imperative. Otherwise, Defendants' lawlessness will continue unchecked, Plaintiffs' business will falter and Defendants' crimes and misdeeds will thereby be rewarded instead of curtailed. If Plaintiffs' business disappears, or even if it continues to shrink because Defendants stole everything needed to run it, money damages awarded six months or a

14

year from now will not redress that loss. Defendants' ongoing criminal conduct should be stopped in its tracks, before the devastation is too severe for recovery.

For all these reasons, Plaintiffs respectfully ask the Court to grant this motion, enter their proposed Temporary Restraining Order, and set a preliminary injunction briefing schedule and hearing date.

Respectfully submitted,

*/s/ Deborah J. Michelson*
DEBORAH J. MICHELSON (0059044)
michelson@buckleyking.com
David A. Kunselman (0073980)
kunselman@buckleyking.com
BUCKLEY KING, LPA
1400 Fifth Third Center
600 Superior Avenue, East
Cleveland, OH 44114-2652
(216) 363-1400 (*phone*)
(216) 579-1020 (*facsimile*)
Attorneys for Plaintiff Craig Butrick

*-and-*

*/s/ Jeffrey T. Kalniz*
JEFFREY T. KALNIZ (0067213)
jeff@kmlawohio.com
PETER MEHLER (0075283)
pete@kmlawohio.com
KALNIZ MEHLER LTD.
P.O. Box 39074
Solon, OH 44139
(216) 401-8448 (*Jeff Kalniz Direct*)
(216) 577-0959 (*Peter Mehler Direct*)
Attorneys for Plaintiff
LittleOuchies Company